**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IA COLLABORATIVE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 5237** |
| | ) | |
| **FATHOM LOOP, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

IA Collaborative, LLC (IA) has sued Fathom Loop, LLC alleging breach of
contract.  Both sides have moved for summary judgment.

**Background**

The following facts are undisputed except where otherwise noted.  The dispute
concerns the performance of a Master Services Agreement (the Agreement) and a
Statement of Work (SOW) that the parties signed in 2022.  On February 23, 2022, IA
and Fathom Loop entered into an agreement under which Fathom Loop retained IA's
services to support "various marketing and consulting initiatives."  Pl.'s L.R. 56.1 Stmt.,
Ex. A at 1.  On March 3, 2022, the parties signed the SOW, in which IA agreed to
execute a three-phase project for Fathom Loop that would include research, product
planning and design services.  The SOW states that project fees will be incurred on a
monthly basis based on "team hours billed" and that "approved expenses will be
reimbursed in accordance with the Agreement."  Pl.'s L.R. 56.1 Stmt., Ex. B at 9.  The

SOW also states that "[p]ayment of 25%, or $243,000 of the estimated fee is required prior to initiation of project." *Id.* The SOW was signed by Jeremy O'Day, Fathom Loop's Chief Technology Officer, and Tony Morello, IA's Vice President of Operations.

The parties dispute whether and to what extent IA completed the work outlined in the SOW. IA's Morello testified during his deposition that he was not involved in the day-to-day operations of the project and is unaware of the scope of the research that IA agreed to conduct. He asserted, however, that he has personal knowledge of the project's completion "as it relates to what is in the scope of work and through [his] relationship with the discipline leads." Morello Dep. at 14:9-15. Morello testified that project manager Megan O'Brien informed him that IA had submitted "most" of the deliverables defined in phase one and a "good portion" of the deliverables outlined in phase two of the project plan to Fathom Loop. *Id.* at 45:8-22. Morello further stated that he had not personally viewed or contributed to those deliverables. *Id.* at 29:8-12. Morello also said that he was not involved in reviewing the time or the amounts billed in the invoices that IA sent to Fathom Loop.

Additionally, in support of its motion, IA provides affidavits submitted by Fathom Loop's O'Day (who is no longer with that company), Fathom Loop independent contractor Sarah Reinhoff, and HiFi Inc. independent contractor Sean Maloney. O'Day states that he has "personal knowledge of a portion of the services that IA performed" for Fathom Loop, and that "the services that IA performed for [Fathom Loop] were acceptable." O'Day Aff. ¶¶ 12-13. O'Day also states that he "would have approved invoices for completed work" and that he "do[es] not know why [Fathom Loop] did not pay IA." *Id.* ¶¶ 14-15. Reinhoff and Maloney state that they are "not familiar with the

2

terms of any contract or statement of work between IA and [Fathom Loop]" but assert that they are "familiar" with the services that IA performed for Fathom Loop and were "satisfied with those services."  Maloney Aff. ¶ 3-4; Reinhoff Aff. ¶¶ 3-4.

James Flores, the founder of Fathom Loop, testified during his deposition that he was unfamiliar with the terms of the Agreement and SOW and that he is "unaware of what exactly IA was doing specifically with Fathom."  Flores Dep. at 38:10-15, 42:2-8. Flores also stated that he relied on O'Day to advise him about the progress of IA's project and that his understanding of IA's work with Fathom Loop is based solely on information he received from O'Day, Maloney, and Peter Green, an independent contractor.  *Id.* at 30:9-21; 46:15-24; 52:8-19.  Flores asserted that at some point O'Day informed him that the work done by IA was "incomplete."  *Id.* at 30:9-21.  Additionally, Flores said that if O'Day, Maloney, and Green indicated that he should tender payment to a vendor, he would do so.  *Id.* at 53:9-13; 55:19-56:6.

Morello testified that at some point he initiated conversations with Flores regarding the collection of payment and that Flores asked to defer Fathom Loop's payments and indicated he had "more funding on the horizon that would allow [IA] to get paid."  Morello Dep. at 53:16-24.  Flores confirmed during his deposition that he "inform[ed] IA that [he] was trying to line up a solution" for Fathom Loop's financial issues.  Flores Dep. at 62:21-63:3.  IA asserts that the total balance Fathom Loop owes IA for the performance of services pursuant to the Agreement is $329,339.80.

IA has moved for summary judgment, contending that it fulfilled its contractual obligations and that Fathom Loop breached the Agreement by failing to pay IA for the services it rendered.  Fathom Loop does not dispute that it made no payments to IA.

Fathom Loop argues, however, that there is insufficient evidence that IA fulfilled its contractual obligations or suffered damages because of any alleged contract breach. Fathom Loop seeks summary judgment on these bases.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists only if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008)).  In analyzing cross-motions for summary judgment, the Court "view[s] all facts and inferences in the light most favorable to the nonmoving party on each motion."  *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) (citation omitted).  The non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture."  *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (internal quotation omitted).

## 1.      Fathom Loop's motion for summary judgment

The parties agree that Illinois law governs the Agreement and accompanying SOW.  Under Illinois law, to prevail on a breach of contact claim, the plaintiff must prove that a valid and enforceable contract existed, all conditions precedent were performed, the defendant breached the contract, and the plaintiff suffered damages because of the breach.  *Shubert v. Fed. Express Corp.*, 306 Ill. App. 3d 1056, 1059, 715 N.E.2d 659, 661 (1999).  It is undisputed that the Master Agreement and SOW are valid and enforceable contracts.  Fathom Loop argues that its refusal to provide payment under

the contract is justified because IA has not demonstrated that it performed its contractual obligations, the parties failed to fulfill a condition precedent, and IA has not established that it is entitled to damages.

### a. Evidentiary objections

Prior to addressing the merits of Fathom Loop's motion for summary judgment, the Court must address the parties' various evidentiary disputes. Fathom Loop objects to the admissibility of the information in paragraphs five and seven of Morello's first affidavit,[1] arguing that they contradict his deposition testimony and fail to lay a sufficient foundation for the admission of IA's invoices for work performed on the Fathom Loop project.

Fathom Loop is correct that "[a] plaintiff cannot defeat a motion for summary judgment by contradict[ing] deposition testimony with later-filed contradictory affidavits." *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) (internal quotation omitted). But the portions of Morello's deposition testimony that Fathom Loop identifies are not contradicted by any of the statements in his affidavit. During his deposition, Morello testified that he was not involved in preparing, reviewing, or sending the invoices to Fathom Loop. Morello Dep. at 39:3-22. In his affidavit, Morello does not claim to have contributed to the development or the calculation of the amounts included in the invoices. Instead, he states that the invoices "were for completed work to date" and were generated in IA's "ordinary course of business." Morello First Aff. ¶ 5.

---

[1] In its cross-motion for summary judgment, Fathom Loop refers to documents submitted by IA's witnesses as declarations, and in its motion for summary judgment IA refers to these documents as affidavits. For clarity's sake, the Court refers to these documents as affidavits.

Morello's statement that Fathom Loop "owes" IA the amounts included in the invoices is the bottom-line subject of this suit, and it is arguably a statement that involves the application of the law to facts.  *See* Morello First Aff. ¶ 7; *Norfolk S. Ry. Co. v. Glob. Tower, LLC*, 620 F. Supp. 3d 784, 795 (N.D. Ind. 2022) (striking declaration statements related to the outcome of an ultimate issue).  The Court will therefore disregard Morello's assertion that Fathom Loop is obligated to pay the amounts included in the invoices.  But his remaining statements regarding his general knowledge of IA's billing process do not contradict his testimony about his lack of personal involvement in generating the invoices IA provided.[2]

Additionally, Morello's second affidavit properly establishes that IA's invoices are admissible as business records under Federal Rule of Evidence 803(6).  "A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records."  *United States v. Reese*, 666 F.3d 1007, 1017 (7th Cir. 2012) (citation omitted).  A qualified witness must have personal knowledge of the procedures used to create the documents; personal knowledge of the contents of the document is not required.  *Thanongsinh v. Bd. of Educ., Dist. U-46*, 462 F.3d 762, 777

---

[2] Fathom Loop also points to Morello's testimony that IA never disclosed its hourly rates to Fathom Loop.  *See* Def.'s Mot. for Summ. J. & Resp. at 7.  But Morello does not make any statements in his affidavit regarding IA's disclosure of its hourly rates.  And to the extent Fathom Loop seeks to raise an argument regarding the authenticity of the documents, "the Court can consider unauthenticated documents on motions for summary judgment if it appears that they are capable of authentication at trial."  *Remmer v. Wexford Health Sources, Inc.*, No. 19-CV-00420-NJR, 2021 WL 535542, at *4 (S.D. Ill. Feb. 12, 2021).  Here, the invoices likely can be authenticated at trial and are therefore properly considered on summary judgment.

(7th Cir. 2006) ("The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices.") (citation omitted). In his second affidavit, Morello stated that he is "personally familiar" with IA's recordkeeping systems and that the invoices IA produced were "generated in the normal course of [IA's] business." Morello Second Aff. ¶ 5. Morello's statements that the invoices were developed through IA's ordinary course of business and that it was IA's regular practice to develop such invoices are sufficient to meet the requirements of Rule 803(6). IA has adequately established that the invoices are admissible as business records.

Fathom Loop also objects to the substantial majority of Morello's testimony and certain portions of O'Day's, Maloney's and Reinhoff's affidavits on the basis that they lack foundation and the requisite personal knowledge. Fathom Loop argues that the party seeking to introduce testimonial evidence "must establish who, what, where, why, and when with respect to the evidence it seeks to introduce." Def.'s Mot. for Summ. J. & Resp. at 9. But in the sole case Fathom Loop relies on in support of its argument, *United States v. Manske*, 186 F.3d 770, 779 (7th Cir. 1999), the Seventh Circuit discussed requirements for laying the foundation for bias-related questions during cross-examination at trial, not affidavits at the summary judgment stage. *See Id.* at 778-79 (discussing foundational requirements for bias evidence). Although Fathom Loop cites no pertinent authority supporting its evidentiary objection, the Court understands Fathom Loop to be objecting to the facts asserted in IA's affidavits under Federal Rule of Civil Procedure 56(c)(4). That Rule states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  Personal knowledge may consist of direct observations or reasonable inferences that are "grounded in observation or other first-hand personal experience."  *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

Morello stated during his deposition that he does not have knowledge of the specific services that individual IA employees performed for Fathom Loop.  *See* Morello Dep. at 29:1-6.  But Morello was designated as IA's corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 4. A Rule 30(b)(6) designee is authorized to testify about "information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6).  Because Morello was designated as a witness under Rule 30(b)(6), he was "free to testify to matters outside his personal knowledge as long as they were within the corporate rubric."  *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004); *Schyvincht v. Menard, Inc.*, No. 18 CV 50286, 2019 WL 3002961, at *3 (N.D. Ill. July 10, 2019) ("Thus, Rule 30(b)(6) does not require that the deponent have personal knowledge of the matters to which he/she testifies . . . .").  Fathom Loop does not argue that any of Morello's testimony included information that would not be known by or reasonable available to IA as a corporation, and it does not cite any authority for the proposition that a party cannot use its own Rule 30(b)(6) witness's testimony at summary judgment.  The Court therefore overrules Fathom Loop's objection to Morello's deposition testimony based on his alleged lack of personal knowledge.

That said, one might question whether an entity may appropriately offer its own

Rule 30(b)(6) witness's testimony affirmatively when it is based on the knowledge of others within the entity. But even if Morello's Rule 30(b)(6) testimony is not *automatically* admissible on IA's behalf, "it may sometimes be inferred that [an] affiant had knowledge of certain events based upon his position within an organization and involvement in relevant circumstances." *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 852 (N.D. Ill. 2018). As Morello explains in his second affidavit, his position as Vice President of Operations included "oversee[ing], direct[ing] and supervis[ing]" members of IA's finance, technology, and talent teams, including O'Day. Morello Second Aff. ¶ 2. During his deposition, Morello described the basis for his statements regarding the status of IA's work on the Fathom Loop project, stating that he acquired knowledge of the services performed by IA employees "through [his] relationship with the discipline leads." Morello Dep. at 14:9-15. As the executive responsible for overseeing IA's project staff, Morello likely would have personal knowledge about matters concerning those projects. *See Cheli v. Taylorville CUSD #3*, 657 F. Supp. 3d 1136, 1146 (C.D. Ill. 2023) (concluding supervisory employee could reasonably be expected to have first-hand knowledge of personnel issues described in affidavit).

Similarly, O'Day, Maloney, and Reinhoff's personal knowledge of the services IA allegedly performed can reasonably be inferred from their roles and the nature of their participation in the Fathom Loop project. In his affidavit, O'Day stated that as Fathom Loop CTO his responsibilities included "reviewing vendors" and that he participated in the review of the SOW. O'Day Aff. ¶¶ 4-5. O'Day also stated that he discussed the "scope of projects" with Flores and provided "updates" on those projects. *Id.* ¶ 7. Given O'Day's position as a conduit between IA and Fathom Loop on the development of the

contract at issue, it is reasonable to infer that he would have knowledge of the services that IA performed pursuant to the contract. *See Wine & Canvas Dev., LLC v. Roberts*, No. 12-CV-1752, 2013 WL 1099895, at *2 (S.D. Ind. Mar. 15, 2013) ("As a corporate officer of Design and Wine, Ms. Roberts is presumed to have personal knowledge of the acts of that business.").

In addition, both Maloney and Reinhoff were hired to work on projects for Fathom Loop, *see* Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 22; Reinhoff Aff. ¶ 2, and it is reasonable to infer that they thereby acquired knowledge about the status and development of those projects. Although Maloney and Reinhoff both stated that they were unfamiliar with the contents of the SOW or the Agreement, their lack of familiarity with the specific contract terms does not undermine their ability to testify regarding the services that IA performed for Fathom Loop. As independent contractors, they could directly participate in the work performed pursuant to a contract without acquiring knowledge of the contractual or financial obligations of the contracting parties. In sum, the Court concludes that IA has laid an adequate foundation and has established sufficient personal knowledge to support consideration of O'Day, Maloney, and Reinhoff's affidavits.

That said, "[e]vidence offered at summary judgment must be admissible to the same extent as at trial." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017). Morello testified during his deposition that an IA employee, Megan O Brien, sent him a written communication four to five days before his deposition informing him that IA provided a number of "deliverables" to Fathom Loop. Morello Dep. at 45:8-24; 46:18-24. Fathom Loop contends that this written communication was never produced. Def.'s

Reply at 6.  As a statement made by someone other than the declarant to prove the truth of the matter asserted (that IA provided deliverables to Fathom Loop), O'Brien's communication is likely inadmissible hearsay.  *See* FED. R. EVID. 801(c).  IA has not identified any possible hearsay exception to support this statement's admissibility, and the Court therefore will not consider it in ruling on the parties' summary judgment motions.

Furthermore, the Court will decline to consider evidence regarding facts plainly not within the knowledge of the affiants.  *See Stone v. Whitman*, No. 02 C 2877, 2003 WL 21697370, at *5 (N.D. Ill. July 22, 2003) ("[I]f an affidavit submitted in opposition to summary judgment contains statements beyond the affiant's personal knowledge, those statements may not be considered.").  In paragraph five of Reinhoff's affidavit, she states, "I understand that the only reason for which I am aware that [Fathom Loop] did not pay IA was because it did not have the funding to do so."  Reinhoff's Aff. ¶ 5.  An independent contractor would not be expected to have direct knowledge of the financial health of a partner company, and Reinhoff's affidavit does not set forth the means by which she acquired this knowledge.  In short, IA has not produced evidence sufficient to support a finding that Reinhoff had personal knowledge of the information included in paragraph five of her affidavit.  The Court therefore will not consider this portion of Reinhoff's affidavit in deciding the summary judgment motions.

### b. IA's performance

Fathom Loop contends that IA failed to adduce evidence that it performed its contractual obligations.  "[P]laintiffs cannot succeed on a breach of contract claim unless they demonstrate their own performance of the contract's requirements."

*Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 691 (7th Cir. 2011).  According to Fathom Loop, IA "failed to produce any evidence that it performed its contractual obligations at any point during this proceeding."  Def.'s Reply at 3.  The Court disagrees.

IA has submitted affidavits from three individuals who purport to have familiarity with the services that IA allegedly performed for Fathom Loop.  All three individuals state that IA performed services for Fathom Loop and that the services were "acceptable" or that they were "satisfied" with these services.  O'Day Aff. ¶ 13; Reinhoff Aff. ¶ 3; Maloney Aff. ¶ 3.  "A sworn declaration is sufficient to defeat summary judgment so long as it is based on personal knowledge and it is non-conclusory." *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, 566 F. Supp. 3d 879, 891 (N.D. Ill. 2021).  Fathom Loop takes issue with IA's failure to provide specific forms of evidence, such as the deliverables that Morello mentioned in his deposition or communications between the parties regarding the services being performed.  *See* Def.'s Reply at 4.  But Fathom Loop cites no legal authority supporting its proposition that evidence of tangible work product is required for a plaintiff to withstand summary judgment on a breach of contract claim.  Additionally, both the SOW and Morello's deposition testimony indicate that IA was hired at least in part to perform research for Fathom Loop.  Pl.'s L.R. 56.1 Stmt., Ex. B at 3; Morello Dep. at 21:12-15.  It is readily apparent that IA could have conducted research on Fathom Loop's behalf without producing physical "deliverables."

The Court concludes that the evidence IA has produced regarding the performance of its contractual obligations is sufficient to withstand summary judgment on its breach of contract claim.

### c.      Condition precedent

The SOW contains a provision that states, "Payment of 25%, or $243,000 of the estimated fee is required prior to initiation of [sic] project."  Pl.'s L.R. 56.1 Stmt., Ex. B at 9.  It is undisputed that IA never received a down payment on the Fathom Loop project. Fathom Loop contends that this $243,000 down payment was a necessary precondition to the initiation of the project and that because the condition was not fulfilled, it has no obligation to pay IA for services it rendered.  A "condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform."  *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020) (quoting *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill.App.3d 304, 307, 741 N.E.2d 651, 653 (2000)).

 IA argues that it started work on the project despite Fathom Loop's failure to provide a down payment "in good faith and in light of its understanding of Defendant's urgent need for such services."  Pl.'s Resp. & Reply at 12.  "A condition precedent may be waived by the party whom it was intended to benefit."  *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 636 (7th Cir. 2022) (applying Illinois law).  Waiver may be established expressly or through conduct "indicating that strict compliance with the condition[ ] is not required."  *Id.* (quoting *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992)).  Waiver requires conduct "wholly inconsistent" with the condition.  *Jokich*, 42 F.4th at 637.

As the party that was slated to receive the down payment, IA was the party whom the condition precedent was intended to benefit.  *Mid-Am. Salt, LLC v. Bob &*

13

*Dave's Lawn & Landscape Maint., Inc.*, No. 1:16-CV-285-HAB, 2019 WL 4415532, at *6 (N.D. Ind. Sept. 16, 2019) (concluding that down payment condition was included in contract for the benefit of the recipient). And IA's alleged performance of services despite the lack of initial payment is "wholly inconsistent" with insistence upon the down payment as a prerequisite to starting work. As discussed earlier, multiple individuals have given sworn testimony or affidavits to the effect that IA performed services for Fathom Loop. And Morello stated that it would not be "unusual" for IA to begin a project without receiving a down payment and that the company would "often start projects ahead of initial payment because of the urgency behind most of the client projects that we work on." Morello Dep. at 38:7-13; 55:16-18. Although Morello indicated that he was not personally familiar with the "urgent" nature of the Fathom Loop project specifically, Morello Dep. at 57:21-24, his testimony supports IA's contention that it waive the down payment as a prerequisite to starting work.

Furthermore, IA contends that Fathom Loop accepted IA's services over a nearly three-month period despite its failure to issue the $243,000 down payment. Pl.'s Resp. & Reply at 12. If Fathom Loop was aware that IA had not received a down payment but continued to contribute to and accept the services IA performed pursuant to the SOW, those actions would indicate that Fathom Loop intended to abandon any insistence upon the down payment as a condition. *Kindra Lake Towing, L.P. v. Donat Ins. Servs., LLC*, No. 16 C 3916, 2016 WL 5339438, at *4 (N.D. Ill. Sept. 20, 2016) ("If a contract includes a condition that is supposed to be satisfied before performance begins, then it is easier to find the condition has been waived if performance has begun and the condition was not satisfied.").

A reasonable factfinder could conclude that IA carried out its duties under the SOW and the Agreement without receiving the down payment, thus waiving the condition precedent. Fathom Loop is therefore not entitled to summary judgment on its condition precedent argument.

### d. Damages

Fathom Loop argues that the Court should grant summary judgment in its favor because IA has not presented admissible evidence demonstrating its alleged damages. "Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). But as noted above, the invoices IA attached to its motion for summary judgment are admissible as business records under Rule 803(6).

Fathom Loop also asserts that "there is no evidence that [it] ever approved any of the expenses for which IA is requesting payment." Def.'s Stmt. Add'l Mat. Facts ¶ 18. The Agreement provides that IA's expenses must be "pre-approved" by Fathom Loop "in writing." Pl.'s Resp. to Def.'s Stmt. of Add'l Mat. Facts, Ex. A at 2. Somewhat confusingly, IA both argues that O'Day approved the included expenses, Pl.'s Resp. to Def.'s Stmt. of Add'l Mat. Facts ¶ 17, and "agrees" with Fathom Loop's assertion that there is no evidence of expense approval. *Id.* ¶ 18. Furthermore, O'Day's statement in his affidavit that he "would have approved invoices for completed work" and his reference to the invoices IA provided as "example invoices" provide little clarity on whether he actually gave written approval for the expenses provided in the invoice. O'Day Aff. ¶ 14. But at the summary judgement stage, a plaintiff's evidence regarding

damages "need not be precise." *Blue Book Servs., Inc. v. Amerihua Produce, Inc.*, 337 F. Supp. 3d 802, 815 (N.D. Ill. 2018) (quoting *Transp. & Transit Assocs., Inc. v. Morrison Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001)). Setting aside the invoice regarding expenses, IA has provided billing statements, time sheets, and other documents supporting its contention that it suffered damages through Fathom Loop's failure to pay fees for the work allegedly performed pursuant to the SOW. *See* Pl.'s Stmt. Add'l Mat. Facts, Ex. C. Fathom Loop is not entitled to summary judgment on this basis.

**2.      IA's motion for summary judgment**

In seeking summary judgment in its favor, IA asserts that "[i]t is undisputed that Plaintiff performed services for Defendant." Pl.'s Resp. & Reply at 1. But Fathom Loop has adduced sufficient evidence to show that there are genuine factual disputes regarding IA's performance and, if nothing else, the extent to which it performed the services called for by the contract. Fathom Loop's Flores testified during his deposition that he was informed by multiple employees, including O'Day and/or Maloney, that IA had not completed its work on the Fathom Loop project. Flores Dep. at 46:14-20. This by itself is sufficient to create a genuine issue of material fact. A reasonable juror could credit Flores's testimony even though it is contradicted by the testimony of IA's witnesses. *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 365 (7th Cir. 2000) ("Where the moving party's version of material facts is supported solely by self-serving assertions, self-serving assertions to the contrary by the nonmoving party may be sufficient to create a credibility dispute which is best resolved at trial.").

Construing all inferences in favor of the non-moving party, Fathom Loop, a

reasonable jury could discredit the evidence that IA has provided regarding its performance of services for the Fathom Loop project. IA's main witness, Morello, "wasn't privy to day-to-day communications related to the project," Morello Dep. at 42:8-21, and he stated that his knowledge of the project's deliverables was acquired secondhand. Morello Dep. at 44:19-24. Neither O'Day, Reinhoff, nor Maloney provide details regarding the work that IA allegedly performed on Fathom Loop's behalf; they simply state that "services" were performed. *See, e.g.*, O'Day Aff. ¶¶ 12-13. A court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Because the parties present conflicting testimonial evidence and it is unclear from the record to what extent the contractual obligations have been performed, IA is not entitled to summary judgment on its breach of contract claim.

## Conclusion

For the foregoing reasons, the Court denies both parties' motions for summary judgment [45] [55]. The case is set for a telephonic status hearing on June 17, 2024 at 9:15 a.m. to set a trial date and discuss the possibility of settlement. The following call-in number will be used: 650-479-3207, access code 980-394-33.

Date: June 11, 2024

_____
MATTHEW F. KENNELLY
United States District Judge

17